**NO. 23-4041**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## JOSHUA BRIAN ROMANO,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

––––––––––––––

**BRIEF OF APPELLANT**

––––––––––––––

Lawrence H. Woodward, Jr.
RULOFF, SWAIN, HADDAD,
  MORECOCK, TALBERT
  &WOODWARD, P.C.
317 30th Street
Virginia Beach, VA 23451
(757) 671-6047

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES.....................................................................iii

PRELIMINARY STATEMENT.................................................................1

STATEMENT OF APPELLATE JURISDICTION ....................................1

STATEMENT OF ISSUES ........................................................................1

STATEMENT OF THE CASE.....................................................................2

    A.    Procedural History...............................................................2

    B.    Factual Background..............................................................2

SUMMARY OF THE ARGUMENT ..........................................................10

ARGUMENT ..............................................................................................11

    ISSUE I.    THE DISTRICT COURT ERRED WHEN IT REFUSED TO ADMIT TESTIMONY AND EXHIBITS FROM THE DEFENSE ON DOCUMENTS RELATING TO THE FINANCIAL TRANSACTIONS.....................................11

        Standard of Review..................................................11

        Argument...................................................................12

    ISSUE II.    THE DISTRICT COURT'S ERRONEOUS EVIDENTIARY RULINGS HAD THE CUMULATIVE EFFECT OF PREVENTING MR. ROMANO FROM PRESENTING HIS DEFENSE AND GETTING A FAIR TRIAL....................................................................15

        Standard of Review..................................................15

        Argument...................................................................16

CONCLUSION ..........................................................................................20

i

STATEMENT REGARDING ORAL ARGUMENT................................................21

CERTIFICATE OF COMPLIANCE .......................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

*Precision Piping and Instruments, Inc. v. E.I. duPont De Nemours & Co.*,
    951 F.2d 613 (4th Cir. 1991)............................................................................12

*United States v. Basham*,
    651 F.3d 302 (4th Cir. 2009)............................................................................16

*United States v. Branch*,
    970 F.2d 1368 (4th Cir. 1992)..........................................................................14

*United States v. Cornell*,
    780 F.3d 616 (4th Cir. 2015)............................................................................14

*United States v. Forrest*,
    429 F.3d 73 (4th Cir. 2005)..............................................................................15

*United States v. Ibisevic*,
    675 F.2d 342 (4th Cir. 2012)............................................................................15

*United States v. Johnson*,
    617 F.3d 286 (4th Cir. 2010)............................................................................12

*United States Lightly*,
    616 F.3d 321 (4th Cir. 2011)............................................................................16

*United States v. Turner*,
    198 F.3d 425 (4th Cir. 1999)............................................................................18

*United States v. Vidacak*,
    553 F.3d 344 (4th Cir. 2009)............................................................................14

*United States v. Woods*,
    710 F.3d 195 (4th Cir. 2013)......................................................................15, 16

**Statutes:**

18 U.S.C. § 2 ................................................................................. 2

18 U.S.C. § 152(2) ........................................................................ 2

18 U.S.C. § 157(3) ........................................................................ 2

18 U.S.C. § 1343 ........................................................................... 2

18 U.S.C. § 1349 ........................................................................... 2

28 U.S.C. § 1291 ........................................................................... 1

**Rules:**

Fed. R. App. P. (4)(b) ................................................................... 1

Fed. R. Evid. 901 ......................................................................... 14

## PRELIMINARY STATEMENT

In this opening brief, Appellee will be referred to as the "United States", "the Government", "the Prosecution", or as "Appellee". Defendant/Appellant, Joshua Brian Romano will be referred to as "Romano", "Appellant", or "Defendant". References to the Joint Appendix will be referred to as (JA_____).

## STATEMENT OF APPELLATE JURISDICTION

This is an appeal from a final judgment of the United States District Court for the Eastern District of Virginia, Richmond Division, in a criminal case pursuant to the Federal Rules of Appellate Procedure. Fed. R. App. P. (4)(b). Title 28 U.S.C. § 1291 states that the Court of Appeals has jurisdiction from all final decisions of the United States District Courts. Accordingly, this Court properly has jurisdiction over this matter. Appellant timely filed a Notice of Appeal from the trial court's final judgment pursuant to Fed. R. App. P. 4(b).

## STATEMENT OF ISSUES

**ISSUE I.    THE DISTRICT COURT ERRED WHEN IT REFUSED TO ADMIT TESTIMONY AND EXHIBITS FROM THE DEFENSE ON DOCUMENTS RELATING TO THE FINANCIAL TRANSACTIONS.**

**ISSUE II.    THE DISTRICT COURT'S ERRONEOUS EVIDENTIARY RULINGS HAD THE CUMULATIVE EFFECT OF PREVENTING MR. ROMANO FROM PRESENTING HIS DEFENSE AND GETTING A FAIR TRIAL.**

## STATEMENT OF THE CASE

### A.     Procedural History

On August 16, 2022, the Appellant, Joshua Brian Romano, was charged in a Superseding Indictment with 18 U.S.C. § 1349 Conspiracy to Commit Wire Fraud, 18 U.S.C. §§ 1343 & 2 Wire Fraud, 18 U.S.C. § 157(3) Bankruptcy Fraud and 18 U.S.C. § 152(2) False Statement Under Oath in Relation to Bankruptcy.   On October 20, 2022, following a jury trial at which the Defendant testified in his own defense, the jury convicted the Appellant of Count I - 18 U.S.C. § 1349 Conspiracy to Commit Wire Fraud, 18 U.S.C. §§ 1343 & 2 Wire Fraud, Counts 3, 4 and 5 - 18 U.S.C. §§ 1343 & 2 Wire Fraud.   The jury acquitted the Appellant of Counts 2, 7 and 9 and the Court dismissed Counts 6 and 8 on the United States' motion.

A pre-sentence report was prepared (PSR) and the Court sentenced the Appellant to 109 months of incarceration on January 26, 2023.   The Appellant timely noted his appeal to this Court.

### B.     Factual Background

This case arises from Appellant's borrowing funds to finance construction projects to rehabilitate and then sell homes in the Richmond area. (JA1074)   The evidence presented at trial showed that a would procure loans from an entity known as Tuckahoe Funding, LLC to be used for the construction projects and that the funds were held in a trust account maintained by a law firm until they were disbursed to

2

be used on the various projects. (JA1074)   The evidence presented indicated that Mr. Rhett Starke, the owner of Tuckahoe, LLC, was to authorize each disbursement prior to it being made.   These disbursements are commonly known as or referred to as draws. (JA1074-1075)   The United States introduced into evidence documents which set forth the uses and restrictions on use of the escrowed funds.   The documents were Commercial Loan Affidavits (CLA) and Construction Loan Escrow Agreements (CLEA) and these documents set forth the specific properties that the funds were to be used for. (JA5112, JA5720, JA5725, JA5726, JA5734)   The law firm that maintained and managed the escrow accounts was the Law Firm of S. Page Allen and the employee of that law firm who was primarily responsible for administering the accounts and disbursing the funds was, Lindsey Passmore, a paralegal at the law firm. (JA240-247)   Ms. Passmore was called as a witness by the United States and testified that she disbursed the funds for work on properties and projects that were not covered by the CLA and CLEA.   She testified that she did this at the request of the Appellant and per her testimony, the Appellant expressed that he needed the funds for other projects and closing and would repay them. (JA247, JA249, JA250)   Ms. Passmore testified that she discussed the use of these funds for purposes outside the authorized properties and terms of the CLA and CLEA on multiple occasions and wired them without the proper authorization of Mr. Starke. (JA250, JA262, JA265, JA268, JA269, JA274)

Ms. S. Page Allen testified that she was an attorney who practiced real estate law and her firm was the escrow agent for the funds that were the subject of the charges. (JA154-156)

Her testimony was that the accounts related to this case were handled by Ms. Passmore who had the authority to disburse the funds with the approval of the lender, Mr. Starke. (JA232)   Ms. Allen said she was not aware of any problems with the funds until approximately December 2017, when she was advised of a problem. (JA181-185)   After being alerted that funds were missing, Ms. Allen told the jury that she looked at various records including internal office ledgers and bank statements and confirmed that the funds had been disbursed to the Appellant and is business. Ms. Allen notified Mr. Starke of the problem. (JA186-187)   She further stated that she did not notify law enforcement or terminate Ms. Passmore from her job and that Ms. Passmore confirmed that the funds had been improperly disbursed. Ms. Passmore stated that she thought Mr. Romano would repay the funds. (JA230, JA237)   Ms. Allen also describes that she was going through an investigation by the Virginia State Bar that was not resolved at the time of her testimony (JA208) and that Mr. Starke had been repaid through a combination of funds from her insurance company and her own personal money. (JA225-228)

Mr. Timothy Benusa was called as a witness by the United States.   Mr. Benusa was hired by the Appellant to work with his companies in early 2017. (JA83)

4

He related that at the time the Appellant's companies did not have a proper accounting system and he began reconstructing and developing financial statements and making recommendations regarding how the business could be more financially responsible. (JA84-92)

He was allowed to testify about and explain Government exhibit 3, a picture of a financial model he built regarding various properties and their financial condition. When he spoke to Mr. Romano about the lack of funds in the escrow accounts to complete the work on the properties, Benusa said that Romano stated someone stole the money or it was used on other projects. (JA43-100) Mr. Benusa left the company after a few months in the spring of 2017. (JA102)

Mr. James Dillon is a former employee of the Appellant and testified for the United States. He worked with Romano from 2012 until approximately October 2017 as a superintendent on construction projects. (JA121-122) He would regularly meet with Appellant to discuss progress and payment on various projects. (JA123-124) In 2017, problems arose with subcontractors being paid and work was not being finished due to payment issues. (JA125-126) The United States moved to introduce exhibit 4, (JA5710) a white board with a list of projects and the progress of the projects through Mr. Dillon. The defense objected stating it was hearsay and not a business record. The Court overruled the objection on the basis that it was not being offered for its truth. (JA126-127) After publishing the white board,

5

government exhibit 4 (JA5710) to the jury, the prosecution proceeded to use it to establish that projects were underwater or dead; meaning the project was out of money (JA128) and Romano would blame the law firm for there not being any money. (JA129)   The defense again objected when the white board was used to assert the fact that certain projects were out of money or dead, even pointing out that the bottom left of the board was the section used to list dead projects including the ones that were the subject of the charges. (JA129-131)   Mr. Dillon confirmed on cross that he did not know the date the picture on the board was taken and that he did not know the financial information about the company. (JA132-134)

Mr. Daniel Allen was another former employee of the Appellant from approximately July 2015 to August or September 2016, whose duties included purchasing and requesting draws from the escrow account to get funds for the projects. (JA137-138)   He testified that on several occasions he made requests for draws by emailing Lindsey Passmore. (JA138-140)   He discussed his concerns about the financial management of the company and left when Mr. Romano did not heed his advice about spending and financial matters.   He agreed he did not know the entire financial picture of the company. (JA148-149)

The United States also presented evidence from individuals involved in a bankruptcy proceeding that the Appellant filed.   Ms. Shannon Pecoraro, an attorney for the United States Trustee, testified that the bankruptcy pettish listed Mr. Brett

6

Starke as a creditor and included the funds loaned by Tuckahoe Funding for the properties that were the subject of the charges in the criminal case.    The bankruptcy was filed under chapter 7 of the bankruptcy code. (JA401-405)   Ms. Pecoraro, also told the jury that Mr. Starke alleged that the money owed to him by the Appellant should not be discharged because Starke alleged it was obtained by fraud,   after this issue was litigated in the bankruptcy case, the Court ruled in favor of Mr. Romano and allowed the debt owed to Mr. Starke to be discharged. (JA430)

During the testimony of FBI Special Agent Edward Leonard, the United States presented a number of excerpts of Mr. Romano's testimony during the bankruptcy proceedings.   This testimony related to Mr. Romano testifying that he was not aware that anything was done improperly with the disbursements from the law firm trust account, did not request the draws, and that he did not wrongfully take the funds or intend to deceive anyone. JA442-443; JA445-446; JA450-457; JA458-460)

The United States' last witness was Mr. Corey Booker, an attorney who was hired by the United States Trustee to investigate the handling of the escrow funds by the Allen Law Firm. (JA479-480)   Specifically, Booker was to determine if there was a basis for a civil embezzlement claim regarding the funds against the law firm, based on Mr. Romano's contention that Ms. Allen had stolen approximately $500,000.00 from him. (JA480)   As part of this investigation, Booker spoke to the

Appellant in the Spring of 2019.   Regarding the escrowed funds, Booker testified that during this interview, Romano stated in effect that during times when money was tight, he had to rob peter to pay paul (JA403-404) by using money from one project for a different one. (JA484)   No other witness corroborated this statement and Booker conceded that there were no notes or recordings to memorialize these comments. (JA485-487)

Mr. Starke testified that he was never advised of the funds being used for purposes that he did not authorize and was not aware the funds were being used in that way. (JA368-377)

The defense called Breese Romano as a witness who is the Appellant's estranged wife.   While she had no official role in Appellant's business, she was aware of the fact that Allen and Passmore held the escrow funds for Appellant's business. (JA590)   She stated that Appellant's real estates business was not making a lot of money and concerns arose about having funds to complete the projects many times. (JA593-596)   Appellant demanded accountings about the escrow money many times from Passmore and Allen but never received them in 2017 and 2018. (JA596)   She also related to the jury that the lack of funds caused the Appellant mental and emotional stress and was a major factor in the breakup of their marriage. She attended a meeting in 2017 during the Christmas holiday season with the Appellant, Passmore, and Allen in which the Appellant demanded to know where

the funds were.  The meeting was very animated by all involved but no answers were given regarding the funds. (JA596-600)

Mr. Romano testified in his own defense.  He related to the jury his background and experience in eh real estate business including buying and remodeling homes for resale. (JA610-620)   He described his relationship with Ms. Passmore both personally and professionally and also told the jury about his business dealings with Mr. Starke, including obtaining the loans that were the subject of the charges that he faced. (JA646)   He also stated that he agreed that all of the funds that were disbursed from the escrow accounts were received and used by him and his business. (JA620-622)   He confirmed that he had used the Allen Law Firm on other projects not related to Mr. Starke. (JA616-617)

He told the jury he had no idea of the money held in escrow except for the accounting from the Allen firm (JA621) and that he relied on the law firm to be truthful and accurate. (JA622)   He indicated that the problem with the funds was his reliance on the law firm and he demanded accountings he never received. (JA628)   He said he requested accounting so many times he could not count them. (JA629)   He denied using money from Mr. Starke for any improper purpose. (JA634)   He denied having any conversation with Ms. Passmore about hiding money, misusing money, and also denied he had any agreement with her to use any funds for a purpose that was not proper. (JA639-641)   Mr. Romano stated to the

9

jury that after he became aware of the problem in 2017, he investigated the issue during the years that followed. (JA644-645)   He stated that he never requested the money and confirmed that the answers he gave in the bankruptcy regarding work not being done on the various projects was correct. (JA647-648)   He reconfirmed that he got escrow money from the Allen firm and stated that it was not used on projects that Starke lent the money for. (JA651-658)

On cross-examination, the United States had Mr. Romano confirm various personal expenses and income, discussed his desire to avoid interest payments on borrowed money, and confirmed that Mr. Romano could not state with specificity which projects the funds from escrow were used on. (JA659-665)   He confirmed that his position was that approximately 1.2 million of escrow money was misapplied and he was unaware of it. (JA666-668)   He was confronted about the use of some of the funds with answers he gave in the bankruptcy proceeding and confirmed that his statement that Mr. Starke   approved it was not mentioned until his trial testimony. (JA669-674)   He confirmed that all the money disbursed from the escrow account benefited him and not Ms. Allen or Ms. Passmore. (JA677)

## <u>SUMMARY OF THE ARGUMENT</u>

The Court's refusal to allow Mr. Jon Bedi to testify on behalf of the defense regarding his review of documents relating to the transactions that were the subject to the case was an abuse of discretion and clear error.   The Court disallowing this

10

testimony and evidence had the effect of preventing the defense from presenting a crucial part of its defense and effectively undermined the Appellant's ability to defend himself.  This was extremely prejudicial to the Defendant and this Court should reverse the convictions and remand this case for a new trial in which the defense is allowed to present this evidence.

The District Court erred by 1) admitting an exhibit that was hearsay and then allowing it to be used for an improper purpose, 2) not allowing full cross-examination on the bias of witness Page Allen, 3) not allowing full cross-examination of witness Lindsey Passmore, and 4) excluding the testimony of John Bedi and the admission of document based on his testimony.  This series of erroneous evidentiary rulings had the effect of denying the Defendant a full and fair opportunity to present his defense and thus the cumulative effect of those errors requires reversal and remand for a new trial.

## **ARGUMENT**

**ISSUE I.    THE DISTRICT COURT ERRED WHEN IT REFUSED TO ADMIT TESTIMONY AND EXHIBITS FROM THE DEFENSE ON DOCUMENTS RELATING TO THE FINANCIAL TRANSACTIONS.**

Standard of Review

This Court reviews decisions of the District Court relating to the admission of testimony and exhibits on an abuse of discretion standard regarding factual issue but reviews the legal application of the Rules of Evidence *de novo*.  A decision made

based on erroneous legal principles constitutes an abuse of discretion. *United States v. Johnson*, 617 F.3d 286 (4th Cir. 2010), *Precision Piping and Instruments, Inc. v. E.I. duPont De Nemours & Co.*, 951 F.2d 613 (4th Cir. 1991).

<u>Argument</u>

The defense called Mr. John Bedi, an experienced attorney who specialized in bankruptcy and financial legal issues, to testify regarding his review and analyze certain documents related to the financial transactions in Appellant's case. Specifically, represented Mr. Romano in a bankruptcy proceeding that related to many of the same transactions that were the subject of the case. He reviewed and analyzed thousands of documents including those relating to the transactions with Mr. Rhett Starke. (JA516-519)

The Court interrupted Appellant's counsel without an objection from the United States and at a side-bar, asked Appellant's counsel "what are you doing" (JA519) They ensued a lengthy conversation between the Court, the Assistant United States Attorney, and defense counsel during which defense counsel made it clear to the Court that Mr. Bedi's testimony and the documents were the entire defense for Mr. Romano. (JA528) The Court called the attorneys to a side bar and ultimately a session without the jury that spans almost 80 pages of the transcript. (JA519-587) During this session, the Court and ultimately the Assistant United States Attorney at the Court's urging, engaged in a far reaching and in counsel's

12

view, a highly inappropriate mission to find some basis to deny the testimony and documents.

The Court first floated that Mr. Bedi could not testify because he was not an expert (JA519-523) and seemed that an objection the prior day to Ms. Allen testimony was pertinent to the analysis. (JA523)   The Court then continues down the track of this testimony being an issue of expertise for several more pages. (JA525-527)   The next step is that there may be a factual issue about the information in the ledger entries, documents, and testimony being proffered by the defense which ultimately leads to Mr. Bedi testifying outside the presence of the jury. (JA530-547)

After this proffer, the Court and prosecutor pivoted from the issue of Mr. Bedi being an expert to a concern about the relevance of his testimony.  The Court ultimately concludes that the testimony is relevant which is patently obvious because the reliability of the records kept by the Allen Firm and Ms. Passmore, is a main issue. (JA549)

The prosecutor and Court then land on an objection to authentication and there is a lengthy discussion and testimony from Ms. Allen and Ms. Passmore on the issue of authorization which includes a math exercise by the Court and prosecutor. (JA550-555)   Not surprisingly, both Ms. Passmore, the convicted felon looking for a sentence reduction, and Ms. Allen, the attorney facing possible bar disciple, both testify that they have no idea where the document came from. (JA556-574)

Interspersed with the testimony are numerous comments by the Court which essentially say the documents proffered by the defense, does not make sense to the Court or match the documents from the Allen Firm that the prosecution used. (JA566, JA573, JA576)

The Court makes numerous comments that in its opinion, the document does not make sense. Throughout all of this, there is never an allegation that the document came from anywhere but the Allen Firm nor is there any allegation that Mr. Bedi received it from any other source or altered it in any way. The Court rules that the document is not properly authenticated and excludes the document and Mr. Bedi's testimony. (JA580-585)

The burden under Rule 901 is very low. *United States v. Vidacak*, 553 F.3d 344 (4th Cir. 2009) A district court need only find that a "proponent" has offered a satisfactory foundation from which the JURY (emphasis added) could reasonably find the evidence in authentic." *United States v. Branch*, 970 F.2d 1368 (4th Cir. 1992) and *United States v. Cornell*, 780 F.3d 616 (4th Cir. 2015)

In this case, Mr. Bedi, received the document during his work on the case involving the Allen Firm, the document is clearly similar to the records that the law firm maintained and there was no testimony or evidence that it came from any other source. The defense made a claim that Passmore and Allen had a motive to falsify the firm's records to cover their own misdeeds and lack of diligence thus records that don't match would not be unexpected. The defense contends that the Court did

14

not follow the law and standards for Federal Rules of Evidence 901. Instead, the Court made a decision that it personally did not think the document made sense and the numbers were off. Those are issues for a jury and the document should have been presented with Mr. Bedi's testimony to allow the jury to decide what, if any, weight to give it.

As counsel for Mr. Romano stated, the contention that Allen and Passmore were manipulating records and recovering for themselves was Mr. Romano's "entire defense". (JA528) The Court effectively denied Mr. Romano his right to present that defense and his convictions should be reversed and the case remanded for a new trial.

**ISSUE II. THE DISTRICT COURT'S ERRONEOUS EVIDENTIARY RULINGS HAD THE CUMULATIVE EFFECT OF PREVENTING MR. ROMANO FROM PRESENTING HIS DEFENSE AND GETTING A FAIR TRIAL.**

<u>Standard of Review</u>

The Court reviews decisions about the admissibility of evidence on an abuse of discretion standard. *United States v. Forrest*, 429 F.3d 73 (4th Cir. 2005) If the Court determines that an erroneous evidentiary ruling was made, the Court reviews for harmless error. *United States v. Ibisevic*, 675 F.2d 342 (4th Cir. 2012) When an Appellant asserts that cumulative errors have occurred that deprive him of a fair trial. The Court reviews to determine if the errors fatally infected the trial so that they violated the trial's fundamental fairness. *United States v. Woods*, 710 F.3d 195 (4th Cir. 2013)

<u>Argument</u>

The District Court made a series of erroneous evidentiary rulings throughout the trial which both allowed improper evidence against the Appellant and prevented admission of evidence that was favorable to the Appellant. The Court has long recognized that a series of 2 or more errors that maybe harmless individually can have the cumulative effect of prejudicing a defendant to the same extent as a single reversible error. *United States v. Woods*, 710 F.3d 195 (4th Cir. 2013), *United States Lightly*, 616 F.3d 321 (4th Cir. 2011), and *United States v. Basham*, 651 F.3d 302 (4th Cir. 2009). The Appellant contends that there were four errors in this case that had the cumulative effect of denying the Appellant a fair trial:

1. The exclusion of the testimony of Mr. John Bedi and the exhibits. This issue is discussed in detail in Issue I and those arguments will not be repeated. As set forth above, the Appellant contends that this error alone is sufficient to support a reversal and remand but is also certainly an error that is part of a cumulative pattern of denying the Appellant the opportunity to fully defend himself.

2. The Court did not allow Mr. Romano's trial counsel to fully cross-examine Linsey Passmore. Ms. Passmore was the key for the United States and the only person who offered any evidence that Appellant had criminal intent and engaged in a conspiracy. She was the other co-conspirator and had pled guilty at the time of her testimony. The defense should have been given wide latitude to

challenge and dispute Ms. Passmore's credibility, memory, and motives for testifying.

This Court erred when it prevented Mr. Romano from cross-examining Passmore whether she ever received an email from Mr. Romano agreeing to defraud the Starkes. There was a dearth of communication between Mr. Romano and Passmore regarding either the draws from SPA as the Starkes' agent or the accounting for the various properties. Mr. Romano wanted to show that there was no written communication between him and SPA regarding draws or ledgers for the six properties at issue and further no planning to deceive the Starkes. The afterthe-fact creation of the ledgers was Passmore's idea, not shared by Mr. Romano. There was significant circumstantial evidence that multiple people used the Falling Water bank account. Gov't Exh. 2 (JA3042) (showing at least four different people's handwriting and signatures on Falling Water checks). Trial counsel asked "Do you have an email . . . that corroborates your accusations that Mr. Romano agreed to do this with you." (JA324-325). This Court ruled that the question was improper because it was asking Passmore to give an interpretation of her emails. (JA325) Mr. Romano contends that the question is proper and Passmore should have been able to answer the question whether she had received an email in which Mr. Romano agreed with her and, to the extent that it called for an interpretation, her understanding of communications received by her was relevant to the main issue at trial - whether the

government proved beyond a reasonable doubt that Mr. Romano had the specific intent to defraud or intentionally abetted Passmore to defraud. The government would have been free to ask their own questions about the relevance emails to Passmore's communications with Mr. Romano.

3.     This Court erred when it prevented Mr. Romano from cross-examining Page Allen for bias. An improper denial of an opportunity to examine a witness for bias is subject to harmless error review. *United States v. Turner*, 198 F.3d 425, 430-31 (4th Cir. 1999). Mr. Romano asserted that SPA had not accounted for the Starkes' loan proceeds properly. Further the ledgers were created after-the-fact by SPA (Passmore and Page Allen) to show what they wanted the ledgers to show, but that the ledgers did not exist prior to December 2017 nor was the accounting kept according to the ledgers presented by the government. Discrediting Page Allen was important to Mr. Romano's defense. Because Allen was involved with Passmore in creating the ledgers that supposedly showed that the six Starkes properties at issue had all loan proceeds withdrawn. Mr. Romano attempted to cross-examine Page Allen for bias because the Virginia State Bar had opened an investigation into Allen's conduct, and so Allen had an incentive – was biased – to ensure her testimony did not give the Virginia State Bar's investigation anymore grist. Poor oversight of Passmore and sloppy accounting could result in bar discipline so Allen had reason to be biased in her testimony and avoid that appearance. This Court

18

erroneously sustained the government's objection based on character evidence for truthfulness and did not address Mr. Romano's correct bias argument. (JA192-198)

    4.    This Court erred when it admitted Government exhibit 4 which contained hearsay. This Court erred when it allowed the government to admit into evidence exhibit 4, (JA5710) a picture of Mr. Romano and witness James Dillon in front of a white board with substantial information on it regarding properties at issue.  Mr. Romano properly objected to the exhibit as hearsay, the government claimed that it was not hearsay because they were not offering the exhibit for the truth of the matter asserted and this Court overruled the objection. Almost immediately the government used the exhibit for the truth of the matter asserted, prejudicing Mr. Romano, by soliciting evidence that the white board showed that a property had no more loan money left but that no work was being done on it – a "dead" property.

    The combination of these erroneous rulings effectively prevented Appellant from presenting a full defense.   The heart of the defense was that the records kept by the law firm were not reliable and proper, that Ms. Passmore and Ms. Allen had strong incentives to falsify and minimize their involvement in the mishandling and loss of funds, and that Appellant's business practices and record keeping, while arguably disorganized, were not criminal or done with the intent to defraud.   The court's ruling set forth above both unfairly restricted Appellant's evidence and allowed the United States to present evidence that was inadmissible and use that

evidence for purposes not allowed under the Rule of Evidence.  The cumulative result of these evidentiary rulings prevented a full and fair consideration of the pertinent facts by the jury during which the full weight and importance of all the relevant facts could be weighed in arriving at a verdict.  Those errors are particularly prejudicial in a case like the Appellant's where the main issue was knowledge and intent since it was uncontested that Mr. Romano received the funds. These errors were not harmless but rather has the cumulative effect of denying the Appellant a fair trial.   The prejudicial affect is further illustrated by the fact that this was an extremely close case as evidence by the jury finding Mr. Romano not guilty on a number of counts that were based on the same evidence and witnesses as those counts he was convicted of.

For all the reasons stated above, the Appellant requests that the convictions be vacated and the case be remanded for a new trial.

## <u>CONCLUSION</u>

The defense has done a detailed and exhaustive analysis of the transcripts and exhibits for other issues to raise.  The trial involved very few objections and the Defendant testified in his own defense as set forth above.   There were no objections to the pre-sentence reports factual content, the enhancements, or the calculation of the advisory guideline range. (JA989)  The Court imposed a guideline sentence. Thus, counsel does not find any other issues which have legal or factual basis to be presented to this Court.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant, Joshua Brian Romano, by counsel, asserts that the arguments contained in this Brief are complete and meritorious.   The Appellant requests oral argument in order to address any issues raised by the United States and to answer any questions the Court may have.

JOSHUA BRIAN ROMANO

By:   */s/ Lawrence H. Woodward, Jr.*
Lawrence H. Woodward, Jr.
Virginia State Bar No. 21756
Ruloff, Swain, Haddad, Morecock,
   Talbert, & Woodward, Jr.
317 30th Steet
Virginia Beach, VA 23451
(757) 671-6000
lwoodward@srgslaw.com

*Counsel for Appellant*

## **CERTIFICATE OF COMPLIANCE**

1.    This document complies with type-volume limits because, excluding the

parts of the document exempted by Fed. R. App. P. 32(f) (cover page,

disclosure statement, table of contents, table of citations, statement regarding

oral argument, signature block, certificates of counsel, addendum,

attachments):

      this document contains <u>4,920</u> words.

2.    This document complies with the typeface requirements because:

      This document has been prepared in a proportional spaced typeface

using <u>Microsoft Word</u> in <u>14-point Times New Roman</u>.

By:   */s/ Lawrence H. Woodward, Jr.*
Lawrence H. Woodward, Jr.
Virginia State Bar No. 21756
RULOFF, SWAIN, HADDAD, MORECOCK,
  TALBERT, & WOODWARD, Jr.
317 30th Steet
Virginia Beach, VA 23451
(757) 671-6000
lwoodward@srgslaw.com

*Counsel for Appellant*

22